3230227 In re the estate of Harold E. Sippel, deceased. Harold Sippel Jr. and Kevin Sippel, appellants v. Homestar Bank & Financial Services, now known as Midland State Bank, Appalachia. Thank you. Crystal, before you get off, I can't see anybody. All I have is a picture of the lights. Judge, go up to the upper right corner of your black Zoom toolbar at the very, very top. You should see a little button that says View. Click that and go to Gallery. Okay, I don't have anything. I have at the top of the screen, I have just people's names all in a row and something that says, don't show this again. Okay. And you can't, can you see yourself? I can at the bottom. I mean, at the top, just like everybody else. I think you're in a different view. Oh, hey, here's something that says view. It just came up. Yep. Okay. Gallery. Yes. Okay. I have everybody. Okay. Perfect. You're welcome. Sorry about that. Everybody. Good morning. Good morning. Morning. Mr. Stoll, would you like to start? Yes. Thank you, Justice McDade. If it may please the court, my name is Michael Stoll. I'm here on behalf of Harold and Kevin Sipple. And I think it goes worth noting at the outset here that our firm has taken over for attorney John Ridge, who was the appellant's attorney in the trial court, had written the appellant's brief, and then unfortunately passed away. And our firm then filed an appearance and wrote the reply brief. So there might be some disconnect or possible confusion, because you will see a brief, the appellant's brief was prepared by and filed by attorney John Ridge. And then we were hired by our clients to do the reply brief and then also participate in this oral argument. And to that end, my comments this morning are going to be brief. And I'm just going to be focusing on what I believe we believe to be the primary points. And the primary points from the appellant's perspective is that the trial court erred in not finding that there was a mismanagement of the trust assets. So there was a case presented by the petitioners, excuse me, the plaintiffs, in that there were no appraisals, the property that was at issue was not listed for sale, that there wasn't there wasn't an approach that a person would take, let alone a bank would take in meeting its fiduciary duty. And we cite to the Uniform Prudent Persons Act, which banks are covered in, that the appropriate way to manage the trust assets would have been to go out and obtain appraisals, current appraisals, advertise the property for sale in the open market, rather than just obtain purchasers, either through private conversations, or people, individuals or businesses that might have approached the trust in the past to sell the property. Mr. Stoll? Yes. Can I ask what assets are left in the estate? It is my understanding that there are no assets left in the estate. Okay, and in your complaint, you don't ask for damages, you only ask for the removal of the trustee, correct? That is correct. Okay, thank you. Yes. As it relates to the mismanagement, also, there was a duty in the trust that there was to be no self-dealing. As acknowledged at the time of trial, the bank did have a $50,000 loan that it ultimately paid off, and it also didn't pay the shareholders who were also due money due to a loan of shareholders. So that, in and of itself, that there was self-dealing by paying off its own loan while it was acting as trustee, should have shifted then the burden, that should have been prima facie case to shift the burden to the bank, who then it should have been their burden, and that is our second argument. Since there was evidence of mismanagement, it should have been the bank's burden, rather than the plaintiff's burden, to demonstrate that there, in that instance, that there was not a breach of duty. As the trial... Mr. Stoll. Mr. Stoll. And the waiver of the self-dealing, Mr. Ridge cited the entire paragraph, but he left off the last two sentences of that paragraph, which is, this section shall only apply to a trustee who is a trustor or our descendant. All other trustees shall be subject to the rule against self-dealing. So those two lines seem to have some impact or import on what you're saying, correct? That's correct, Your Honor. That the bank was not forgiven or relieved of any duty against self-dealing. It would have only been the decedent or any of the beneficiaries of the trust, the bank did in fact have an obligation not to engage in self-dealing. So that would have, that should have triggered the finding of a mismanagement, and then again shifted the burden. The trial court found in its ruling, it makes certain references that the petitioner failed to produce evidence of any intentional or negligent acts that were harmful to the estate. So just by way of that passage in the court's ruling, it's evident that the court failed to shift the burden onto the bank to demonstrate that there wasn't in fact a breach of fiduciary duty. Mr. Stoll, is that an argument that Mr. Ridge raised? It is not. And you wrote the reply brief? Correct, Your Honor. I will fully acknowledge that the arguments made in the reply brief were not raised in the initial appellant's brief. And there are certainly portions of the appellant's brief that don't contain citations, which I recognize and own as well. Okay. As it relates, to the appellant's brief, the appellant's brief focuses in on a lot of the background and credentials of the individuals that either the bank trustee or the individuals that the bank had consulted with. And while one's credentials could be numerous and they could be qualified, that does not relieve them or that does not equate to their inability to then not breach a fiduciary duty. Just because someone has a lot of experience and has administered a lot of trusts, that doesn't mean that they inherently can't breach a fiduciary duty. And again, it would be our position that the bank should be held to a higher standard, that there should have been appraisals, there should have been advertisements on the open market for the two pieces of property, as well as the equipment and tools, and that the bank had breached their fiduciary duty in failing to undertake an appraisal or advertise a public sale. Mr. Stoll, do you acknowledge that certain exhibits, for example, the two appraisals, M and N, are not part of the record on appeal? I do, Your Honor. And I wish I had an answer as to why, but forgive me, I do not. That's fair. Thank you. And that concludes my opening argument. Unless the Justices have any other questions? Are there any questions? No, Your Honor. Thank you, Mr. Stoll. Mr. Clark? Good morning. Good morning. Good morning to the Court. Good morning to Mr. Stoll. May it please the Court. My name is Mike Clark. I represent the Appalee Respondent Midwest Bank, which used to be called Homestar. I'm sorry. Yes, which used to be called Homestar. We ask that the judgment of the trial court please be upheld and that the relief sought by the appellant be denied. A couple introductory comments. First of all, I will say as well, I don't know why certain items were not in the record on appeal other than, I guess, Mr. Rich didn't put them in there for one reason or another. With respect to the arguments, which Mr. Stoll kindly admitted are new in the reply brief and not raised in the brief of the appellant, I'd like to point out they also apparently were not made in the trial court. I was unable to find any instance in the trial court record, whether the common record, the reports of proceedings, or the supplemental record that made any reference to the main arguments being raised in the reply. Therefore, we take the position that they've been waived. Mr. Clark, let me ask you the same question if I may, Mr. Clark. Are there any assets left in the estate? To my knowledge, no. Thank you. If the court reviews our statement of facts and our brief of that belief, it will find that over the seven-some years of this litigation, petitioners have alleged a flowing string of allegations of misconduct, conspiracy, secret backroom deals, which one after the other fell to the truth. So they've kept moving on and creating brand new allegations, which ultimately were resolved at trial. The trial court judged the credibility of certain of these witnesses, I guess all of them, actually. In particular, the trial court emphasized that it found the testimony of the respondents expert, Mr. Pachter, far more credible and chose to derive its opinions mostly from Mr. Pachter's expert opinion and explanations. Many of the factual statements, not only in the trial court but also in the briefs on appeal, you'll see from our statement of facts are just plain incorrect. They will say that certain documentation was never provided to them. Well, there was testimony they defected. Some of the documentation they've been claiming they never got was given to them. The court heard that testimony or apparently judged that testimony in favor of the respondents. Also, the record on appeal indicates that several of the petitioners' difficulties, especially when it came to documentation, were so making. The record is replete with the facts that often apparently Mr. Ridge could not find certain documents that were provided to him by petitioners. In fact, the appellants have not appealed the fact that the trial court placed a discovery sanction on Mr. Ridge, on the appellants. Mr. Clark, let me ask you a question right now, if I could, please. Was the bank a creditor at the time that it accepted the trustee appointment? There was a credit, yes, a line of credit of $50,000, I believe. Do you believe it is ever proper for an estate creditor to assume trusteeship over the estate? I believe it is when the, particularly when all of the beneficiaries, the former co-trustees agree to make the bank. And especially, we know that at least one, potentially two, of the beneficiaries were well aware that that line of credit was out there, particularly Deborah Kroll, who personally lent money so that the company could stay in business in order to pay off a judgment. There also was no testimony to the effect that the bank was improper in doing this, that it did so surreptitiously. And so in that context, yes, I believe it's perfectly fine. Do you believe that the principles of the prudent person rule do apply to the bank in its role as trustee? We raised that as more of an alternative argument. As the court may note, it was the trust itself removed itself from that role. So in that context, no, but we do believe it was satisfied nonetheless, as shown through the testimony in the court. And when you say the trust removed that, you're referring to those last two sentences that I asked Mr. Stoll about? The trust agreement. Right. Yes. Okay, thank you. Mr. Clark, was there any evidence in the record that Mr. Sipple had any mental problems after his accident? Excuse me. There was to the extent that the one of the petitioners testified to that effect. However, through cross-examination, that same, it was Mr. Sipple Jr. testified that he was of that opinion. But in cross-examination, he was shown several photographs of a senior doing all kinds of activities. He admitted that he had no real medical evidence for the effect that Mr., that senior was suffering from any mental incapacity. I'd also like to point out that that count was raised in the initial complaint and was dismissed. And that has not been appealed. Okay. Thank you. Thank you. It is unfortunate that Mr. Rich passed away. He was a nice man. I feel bad about that. But he did, he did make some decisions during this case, strategy. And he apparently waived certain arguments, if he were ever going to make them. We believe that the trial court, first of all, did not misapply any burdens. Even if this court were to go into some of the arguments raised in reply, as far as burden proof, there really is no evidence to the effect that the court didn't correctly do this as expressed by a reply brief. One can review the transcript and the issue of whether a primathesia case didn't even arise in the arguments or in the briefing. As counsel admitted in the reply brief, it is vague, or I believe the phrase was something effective. It is vague whether or not the transcript shows that the court did not follow exactly the rule of law that is proposed in the reply. The court's opinion can be easily interpreted to mean that petitioners never even met their initial burden. Mr. Clark, by allowing the trial to go forward and allow both sides to put on their evidence, isn't that really an analysis of whether the court made the finding that there was a suspicion of mismanagement? That if it did or didn't, or it had questions, it allowed everybody to put their evidence in? It did. However, we have to keep in mind, too, that counsel in the reply brief raised a prior motion to dismiss, and it's the fact that the count three, the one that went to trial, was not dismissed. Well, if you go back and read that transcript from the court's rulings, you find that really the judge basically said, I'm not going to dismiss this. I'm just going to let everyone commit. I'm just going to let everyone do discovery so we know what happened. So at that point, the court was not saying that a suspicion had been raised yet. The court basically said, I'm going to give you a break. I'm going to let you look at everything and talk to everybody, and we'll go from there. And then, as your honor pointed out, we went to trial. Everybody put on their own evidence. The petitioners were restrained a little bit by the court's discovery sanction, which also has not been appealed. And the court listened to all the testimony and decided who to believe. For these, among other reasons, we believe that the judgment of the trial court is absolutely appropriate and should be affirmed. Thank you. Is there any other questions for Mr. Clark? No. Mr. Stoll, any rebuttal? Just briefly, Justice. With regard to the appellee's statement regarding the witnesses that were called to testify, the defendant bank's witnesses or witness that was called to testify was Mr. Parker. He had testified for the purpose of demonstrating that the net operating loss was entirely worthless. So to the extent that counsel's argument was that the expert witness of the bank was found to be more credible than the expert witness of the appellant, that should be really just confined to whether the net operating loss was entirely worthless. And just my final point I had stated in my opening argument that it's implicit through the trial court's ruling that it was placing the burden on the petitioners. I erred in saying it's implicit. The very last paragraph of the trial court's order provides that the petitioners had the burden of proving Homestar violated its fiduciary duty to the Harold and Winnie Civil Trust. So the trial court did, in fact, place the burden expressly upon the petitioners. And those are the only two additional points I wish to make. Any other questions? No. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court now stands in brief recess for a panel change. Thank you very much.